UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MATTHEW JASON BAUER,

    Plaintiff,

v.                              CAUSE NO. 3:21-CV-843 DRL-MGG

MARTY CORLEY & MICHIGAN CITY
POLICE DEPARTMENT,

    Defendants.

OPINION AND ORDER

Matthew Bauer, proceeding *pro se*, sued Officer Marty Corley and the Michigan City Police Department (MCPD) over an interaction he had with Officer Corley in the parking lot of an outlet mall in Michigan City, Indiana. Officer Corley and MCPD move for summary judgment on all claims: false arrest, illegal search, excessive force, intimidation, violation of due process, intentional infliction of emotional distress, discriminatory treatment, and that MCPD has a custom, policy, or practice of constitutional deprivations. The court grants summary judgment.

BACKGROUND

The following facts are undisputed, either by the parties' agreement or because the objecting party failed to comply with N.D. Ind. Local Rule 56-1.[1] *See Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) (even *pro se* litigants must follow local rules). All inferences are drawn in Mr. Bauer's favor.

During the holiday season, MCPD adds additional patrols near the Light House Place Premium Outlet Shopping Mall to stop and deter thefts that occur there and in the cars in the parking

---

[1] Mr. Bauer's response to the motion for summary judgement doesn't genuinely dispute any of the defendants' statement of material facts. The closest he gets is stating that he "was detained for more than 13 minutes," [ECF 53 at 3], but he doesn't provide any citation to evidence in the record. This fact is not supported. *See* Local R. 56-1(e). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

lot [ECF 38-2 ¶ 6]. On November 24, 2019, Officer Corley was patrolling his assigned district in Michigan City, which includes the outlet mall [Id. ¶ 4]. Officer Corley was flagged down by a woman who told him that she thought a man was stealing from a blue car in the parking lot [Id. ¶ 7]. Officer Corley begins driving to the parking lot. At this point, the dash camera video begins and then captures the rest of the events [ECF 42 (Ex. 2)].

Officer Corley then saw the man—later identified as Mr. Bauer—riding a bicycle away from a vehicle in the parking lot [ECF 38-2 ¶ 8, 10, 11]. Officer Corley stopped Mr. Bauer and asked him to get off the bicycle twice before he complied [Id. ¶ 11]. Mr. Bauer was then twice directed to stop putting his hands in his pockets, but he refused [Id. ¶ 12]. Officer Corley told Mr. Bauer to put his hands on the squad car, then he performed a pat down search of Mr. Bauer [Id. ¶ 12]. Officer Corley removed numerous plastic bags and a set of car keys from Mr. Bauer's pockets [ECF 42 (Ex. 2) at 02:31]. Officer Corley asked Mr. Bauer for identification, but Mr. Bauer advised that he didn't have his identification on him [ECF 38-2 ¶ 13, 15]. Mr. Bauer said that he owned the blue car that he was biking away from [Id. ¶ 13]. Because Officer Corley was concerned Mr. Bauer had a weapon, he handcuffed him [Id. ¶ 14].

The body camera video then begins as Officer Corley searched Mr. Bauer's name on his computer in the squad car and continued to engage him in questioning [ECF 42 (Ex. 3)]. An additional officer, Officer Pliske[2], arrived on the scene [ECF 38-2 ¶ 16]. Officer Corley asked her to perform a check of the blue car [Id. ¶ 16]. She checked the license plate and determined that Mr. Bauer owned the car [Id. ¶ 16-17]. Once he heard that Mr. Bauer owned the car, Officer Corley released the handcuffs and returned his car keys [Id. ¶ 18]. The encounter lasted approximately 9 minutes and 40 seconds, and Mr. Bauer was handcuffed for approximately 8 of those minutes [Id. ¶ 20]. Officer Bauer and Mr. Corley had no further interaction [Id. ¶ 19].

---

[2] This officer's first name is not included in the record.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

First, instead of disputing the material facts provided by the defendants, which are supported by both Officer Corley's sworn affidavit (Exhibit 1) [ECF 38-2] and the dash camera and body camera footage (Exhibits 2 and 3) [ECF 42], or presenting evidence on which a reasonable jury to could rely to find for him, Mr. Bauer focuses his response on arguing that the dash camera footage provided is "illegal," was "remade to frame plaintiff with and ruin his court case," and made with a computer-generated imagery (CGI) suit, like the Spiderman movies [ECF 54]. He says "[t]he police [] went back to the parking lot and refilmed the dash cam video it is a computer generated fraud." [ECF 54 at 1].

The court has reviewed both videos in their entirety and has observed no indications that the videos were altered or falsified in any way. Mr. Bauer's speculation, not based on any admissible evidence, that the video footage was altered is not sufficient to prevent summary judgment. *See Hamer v. Neighborhood Hous. Servs.*, 897 F.3d 835, 841 (7th Cir. 2018); *Austin v. Walgreen Co.*, 885 F.3d 1085, 1089 (7th Cir. 2018) ("Speculation does not defeat summary judgment."). A reasonable jury isn't required or expected to believe the fantastical.

"Although on summary judgment [the court] generally view[s] the facts in the light most favorable to the nonmovant, in rare circumstances when video footage clearly contradicts the nonmovant's claims, [the court] may consider that video footage without favoring the nonmovant." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) (citing *Scott v. Harris*, 550 U.S. 372, 378-81 (2007)). "Of course, videos are sometimes unclear, incomplete, and fairly open to varying interpretations," but "[w]hen video footage firmly settles a factual issue, there is no genuine dispute about it, and [the court] will not indulge stories clearly contradicted by the footage." *Horton*, 883 F.3d at 944; *see also Gasser v. Vill. of Pleasant Prairie*, 2022 U.S. App. LEXIS 8015, 4-5 (7th Cir. Mar. 28, 2022) ("In cases where video evidence is available, as here, there are additional contours to the summary judgment methodology. '[T]o the extent [plaintiff's] story is 'blatantly contradicted' by the video such that no reasonable jury could believe it, we do not credit [his] version of events.'") (citation omitted).

The court turns to the merits of the summary judgment motion, considering the videos as evidence. Mr. Bauer's complaint alleges false arrest, an illegal search, excessive force, intimidation, violation of due process, intentional infliction of emotional distress, discriminatory treatment, and he claims that MCPD has a custom, policy, or practice of constitutional deprivations.

    A.  *False Arrest, Illegal Search, and Excessive Force.*

Mr. Bauer claims that Officer Corley falsely arrested him, performed an illegal search, and used excessive force. Officer Corley and MCPD say that Mr. Bauer was never arrested, and Officer Corley

4

instead performed an investigatory stop and a legal pat down search. No reasonable jury could disagree with the defendants given the evidence on the record.

Under the Fourth Amendment, a "seizure" does not occur when a police officer merely approaches an individual and asks him or her questions. *Florida v. Royer,* 460 U.S. 491, 497 (1983). Only when a law enforcement officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "The 'crucial' test for determining if there has been a seizure is 'whether taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *United States v. Smith*, 794 F.3d 681, 684 (7th Cir. 2015) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).

A law enforcement officer may conduct an investigatory stop if that officer has a reasonable suspicion supported by articulable facts that criminal activity is afoot. *United States v. Broomfield*, 417 F.3d 654, 655 (7th Cir. 2005) (citing *Terry*, 392 U.S. at 20); *see also United States v. Bullock*, 632 F.3d 1004, 1014-15 (7th Cir. 2011). Reasonable suspicion is more than a hunch but less than probable cause, and it requires objective justification for making a stop. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). When determining whether reasonable suspicion exists, courts must assess the "totality of the circumstances to assess whether the detaining officer has a particularized and objective basis for suspecting illegal activity." *United States v. Zambrana*, 428 F.3d 670, 675 (7th Cir. 2005) (quotation omitted). This assessment is based on "the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect." *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006).

To comply with *Terry,* first the investigatory stop must be lawful. *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). This condition is satisfied when an officer "reasonably suspects that the person

5

apprehended is committing or has committed a criminal offense." *Id.* Second, to proceed from a stop to a frisk, the officer "must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Id.* at 327; *United States v. Brown,* 188 F.3d 860, 864 (7th Cir. 1999) ("must also be able to point to specific and articulable facts indicating that the individual may be armed and present a risk of harm to the officer or to others."). An officer need not be absolutely certain that the individual he or she is about to frisk is armed; the issue is whether a reasonably prudent person under the circumstances would be warranted in the belief that his or her safety or that of others was in danger. *Terry,* 392 U.S. at 28.

Use of force against a suspect is a seizure subject to the reasonableness requirement of the Fourth Amendment. *Smith v. Finkley*, 10 F.4th 725, 736 (7th Cir. 2021). When determining the reasonableness of force, the court considers the circumstances, including the severity of the crime, the immediate threat the suspect posed to the safety of officers and others, and if the suspect actively resisted or attempted to evade arrest by flight. *Graham v. O'Connor*, 490 U.S. 386, 396 (1989). In addition, the court considers "whether the individual was under arrest or suspected of committing a crime; whether the individual was armed; and whether the person was interfering or attempting to interfere with the officer's duties." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015).

The analysis requires an inquiry into "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (quotations omitted). Courts must examine the reasonableness of the actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. An officer acts reasonably when deploying force if he "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in

circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-397. Ultimately, the fundamental question is "whether the totality of the circumstances justified a particular sort of . . . seizure." *Garner*, 471 U.S. at 8-9.

Here, there is no evidence that contradicts Officer Corley's version of events. It remains undisputed that just before Officer Corley engaged with Mr. Bauer, a witness told him that she believed Mr. Bauer was stealing from a car in the parking lot. Officer Corley saw Mr. Bauer riding his bicycle away from the car. MCPD has more officers patrolling the outlet mall during the holiday season due to an increase in thefts, including from the cars in the parking lot. Once Officer Corley confirmed that Mr. Bauer owned the car, he released the handcuffs and let Mr. Bauer go. Officer Corley reasonably suspected that Mr. Bauer was stealing or had stolen from the car, so he performed a legal *Terry* stop. He released Mr. Bauer as soon as the brief investigation concluded. The encounter lasted approximately 9 minutes and 40 seconds, and Mr. Bauer was handcuffed for approximately 8 minutes. The stop—though short—was lengthened by Mr. Bauer's uncooperativeness (in not getting off the bike or keeping his hands out of his pockets immediately) and failure to have his identification on him. No reasonable jury could find for Mr. Bauer on this record. Summary judgment is granted for the defendants on the false arrest claim.

The pat down search was also legal. It remains undisputed that within the first twenty seconds of engaging with Officer Corley, Mr. Bauer was told twice to take his hands out of his pockets [ECF 42 (Ex. 2) at 01:10-01:20]. Because of this behavior, Officer Corley harbored a reasonable suspicion that Mr. Bauer may be armed and may present a risk of harm to himself or others. He proceeded to pat down Mr. Bauer and check his pockets, removing numerous plastic bags and the car keys. This search took approximately 75 seconds and included questioning about where Mr. Bauer was going, if the blue car was his, what year the car was, why he was riding a bike if he had a car, and if he had

identification on him [ECF 42 (Ex. 2) at 01:30-02:45]. Based on the record, no reasonable jury could conclude that the pat down search was illegal. Summary judgment is granted on this claim.

The use of handcuffs was not excessive force. Under the Fourth Amendment, "[a] person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury, if that person little or no risk of flight or threat of injury." *Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014); *see also Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003) (collecting cases describing when the use of handcuffs constitutes excessive force, including when officers "refus[e] to loosen plaintiff's chafing handcuffs," and where tight handcuffs caused nerve damage or a "sprained wrist, shoulder, and elbow") (citations omitted)). However, nothing on this record shows that the handcuffs did inflict pain or injury or that Officer Corley knew that the handcuffs would cause such pain or injury. Instead, Mr. Bauer posed a flight risk and a potential threat to Officer Corley such that the use of handcuffs was reasonable. Mr. Bauer was twice told to get off his bicycle and then twice directed to stop putting his hands in his pockets before he complied. Mr. Bauer was directed to place his hands on the squad car, which he did initially [ECF 42 (Ex. 2) at 01:35], but then three times over the next 75 seconds he lifted his hands from the squad car and began to turn his body away from the squad car and toward Officer Corley until he was redirected, again three times, to "sit tight" [ECF 42 (Ex. 2) at 01:41, 2:21, 2:50]. Officer Corley then placed the handcuffs on Mr. Bauer [ECF 42 (Ex. 2) at 02:55], where they remained until Mr. Bauer was released about 8 minutes later [ECF 42 (Ex. 2) at 11:14]. Mr. Bauer then immediately started collecting the bags that Officer Corley had removed from his pockets and showed no visible signs of injury or distress. Officer Corley's decision to handcuff Mr. Bauer while the brief investigation unfolded was objectively reasonable in light of the facts and circumstances confronting him during the encounter. The video footage clearly contradicts Mr. Bauer's claim of excessive force. No reasonable jury could find otherwise. Summary judgment is granted on the excessive force claim.

      B. *Intimidation, Violation of Due Process, Intentional Infliction of Emotional Distress, Discriminatory Treatment, and Monell.*

Mr. Bauer brings several other broad claims: intimidation, violation of due process, intentional infliction of emotional distress, discriminatory treatment, and that MCPD has a custom, policy, or practice of constitutional deprivations, see *Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658 (1978). He addresses none of them substantively in his summary judgment briefing.[3] This is the time in which the record is tested to see whether a reasonable jury could find for a party. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). An undeveloped argument based on Mr. Bauer's fantastical theory that the dash camera footage was created by the defendants to fraudulently "refilm" the encounter in question won't carry the day. *See Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) ("However, [the court's] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture."). The court won't craft argument for Mr. Bauer on these claims. *See Gross v. Town of Cicero*, 619 F.3d 697, 704-05 (7th Cir. 2010). "To survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict in [his] favor.'" *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)). After careful review of the record and governing law, Mr. Bauer hasn't presented any evidence to support the remaining claims, much less established a genuine issue for trial, so summary judgment is granted for the defendants. As no claims remain against Officer Corley, the court need not address qualified immunity.

---

[3] He makes three conclusory statements related to these claims: "Plaintiffs due process claim still stands cause the defense tried to refilm the pullover" [ECF 53 at ¶ 5], "intentional infliction of emotional distress still stands cause defenses video is illegal" [*Id.* at ¶ 6], and "The *Monell* claim still stands and I would like to claim fraud for the video that was remade to frame plaintiff with and ruin his court case" [*Id.* at ¶ 8].

CONCLUSION

Accordingly, the court GRANTS Officer Corley and the Michigan City Police Department's motion for summary judgment [ECF 37]. This order terminates the case.

SO ORDERED.

July 12, 2023                                          *s/ Damon R. Leichty*
                                                       Judge, United States District Court